Anthony J. RICCI

v.

The UNITED STATES.

No. 398–71.

United States Court of Claims.

Dec. 18, 1974.

Edwin J. McDermott, Philadelphia, Pa., attorney of record for plaintiff.

Thomas W. Petersen, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant.

Before SKELTON, KASHIWA and KUNZIG, Judges.

## OPINION

KUNZIG, Judge: *

In this civilian pay case, the question before us is whether plaintiff's discharge from his position as a welder at the Philadelphia Naval Shipyard for taking numbers bets from his fellow employees was supported by substantial evidence and not arbitrary or capricious. We must also decide whether the Navy complied with applicable procedural requirements in effecting plaintiff's removal on a charge of "Conduct Unbecoming a Government Employee." Finally, we must decide the further question whether Navy regulations prohibiting "Gambling or unlawful betting on Navy premises" (gambling) and "Promotion of gam-

---

* We are indebted to Trial Judge C. Murray Bernhardt for his findings of fact, which have been adopted in their near entirety, and for his recommended opinion, though we have substituted our own in reaching a different result.

bling on Navy premises" (promotion of gambling) are sufficiently clear and distinct to withstand a "void for vagueness" challenge under the due process clause of the fifth amendment to the Constitution.[1]

We hold for defendant. The dismissal was supported by substantial evidence; the procedures followed by the Philadelphia Naval Shipyard in removing plaintiff were in accordance with appropriate Civil Service regulations; and the distinction between "gambling" and "promotion of gambling" is sufficiently clear to withstand constitutional challenge, particularly in light of plaintiff's acknowledged awareness of the distinction prior to his dismissal.

This case is before us on exceptions by both parties to the trial judge's report. After a full hearing, Trial Judge C. Murray Bernhardt resolved both the substantial evidence and procedural issues against plaintiff. Nevertheless, he found *for* plaintiff on the ultimate question of defendant's liability for wrongful termination of plaintiff's employment. This paradoxical result was made possible by the conclusion that Navy civilian personnel regulations forbidding "gambling" and "promotion of gambling" lacked sufficient clarity to distinguish one from the other and were, accordingly, void for vagueness under the due process clause of the fifth amendment. While agreeing with the trial judge's determination on the first two issues, we find the record before him to be supportive of an opposite result on this constitutional issue. Accordingly, on review, aided by the findings of fact as modified and by the briefs and arguments of the par-

ties, we reach the opposite result and hold that plaintiff's removal was entirely proper and not constitutionally infirm.

*Factual Background*

Anthony J. Ricci was charged as an employee of the Philadelphia Naval Shipyard (Shipyard) in 1968 for "Conduct Unbecoming a Government Employee." The charge was accompanied by three specifications of misconduct, the first two relating to instances of Ricci's accepting numbers bets from two of his co-workers at the Shipyard,[2] namely:

a. Information has been received from Mr. Stanley J. Polite, a Shipyard employee, that he placed $1.00 numbers bets with you in the cafeteria, Building # 570, in May 1967.

b. Mr. Walter L. Mason, another Shipyard employee, has reported that he has also placed numbers bets with you in the amounts of $.25 to $1.00 during a six-week period between August 1967 to on or about 1 October 1967, in the employees' cafeteria, Building # 570.

After plaintiff made written reply to the Notice of Proposed Removal, a letter dated July 16, 1968 from the Shipyard production officer informed plaintiff that specifications 2a and 2b, *supra,* were found to be sustained. Plaintiff was discharged from his position, effective July 19, 1968. At an administrative appeal hearing held September 16, 1968, Shipyard employees Polite and Mason corroborated the evidence implicating plaintiff, which they had earlier given to an FBI special agent. The officer who presided at plaintiff's adminis-

---

1. It should be noted that plaintiff never raised the "void for vagueness" issue with regard to the distinction between "gambling" and "promotion of gambling." Rather, this issue was injected *sua sponte* by the trial judge. Although the propriety of such action is questionable in this case, we decline to reverse the trial judge on the technical grounds offered by defendant in its brief. We reverse the trial judge's recommended opinion on the merits, opting for this course because we feel our recent decision in Reil v. United States,

456 F.2d 777, 197 Ct.Cl. 542 (1972), distinguishes the two offenses with sufficient clarity to withstand any void for vagueness challenge. Although we would not preclude a trial judge in an appropriate situation from raising an issue *sua sponte,* this is not such a case.

2. The third specification, relating to Ricci's possession of an Irish Sweepstakes ticket when he was arrested by FBI agents at the Shipyard on March 15, 1968, was dropped.

trative appeal provided a report of his findings to the Commander of the installation. This document noted that the Standard Schedule of Disciplinary Offenses and Penalties for Civilian Employees in the Naval Establishment (Standard Schedule), posted on the bulletin board of every shop at the Philadelphia Naval Shipyard, specified "promotion of gambling on Navy premises" (promotion of gambling) as an offense for which *removal* was within the permissible range of penalties for a first infraction.[3] Finding that the evidence proved plaintiff had, in fact, been involved in "promotion of gambling," the hearing officer concluded plaintiff's dismissal on a charge of "Conduct Unbecoming a Government Employee" was warranted.

On May 29, 1969, the Civil Service Commission's Acting Philadelphia Regional Appeals Officer (the Region) found all procedures required by Civil Service regulations had been followed, the evidence sustained the charge, and the penalty of removal was justified. Plaintiff subsequently appealed to the Civil Service Commission Board of Appeals and Review (CSC BAR) which, by decision issued July 18, 1969, again sustained plaintiff's removal.[4]

█ In his petition, plaintiff seeks back pay, alleging simply that his removal was arbitrary, capricious, and not based upon substantial evidence. Our

standard of review in a civilian personnel dismissal action is two-fold. This court will both

> [make certain that the] administrative agency has complied with the prescribed procedural requirements * * [and] * * * review the action to determine whether the officials who effected the dismissal acted arbitrarily, capriciously or were so grossly erroneous as to be in bad faith, as for instance where they may have acted without substantial evidence or where they exceeded their authority.

Morelli v. United States, 177 Ct.Cl. 848, 858 (1966). *Accord,* Grover v. United States, 200 Ct.Cl. 337, 343 (1973).

## I. Substantial Evidence

█ Plaintiff alleges his discharge was improper because he was not involved in "promotion of gambling" for which removal was an authorized penalty for a first infraction. He claims following his perception of the distinction between "promotion of gambling" and "gambling" we made in Reil v. United States, 456 F.2d 777, 197 Ct.Cl. 542 (1972), to have been simply wagering his own money and paying winners out of his own pocket rather than taking numbers bets on behalf of a numbers bank connected with organized crime. This, plaintiff says, was simply "gambling" and not "promotion of gambling" within the meaning of *Reil.*[5]

---

3. When the penalty chosen by an agency is within the range of sanctions provided by applicable disciplinary regulations, the severity of the sanction imposed is within the discretion of the agency. De Nigris v. United States, 169 Ct.Cl. 619, 625 (1965); Grover v. United States, 200 Ct.Cl. 337, 353 (1973). This doctrine is firmly rooted in precedents of this court. In *Grover,* we held that a penalty authorized by regulation may be overturned if the sanction is so harsh that there is "an inherent disproportion between offense and punishment." 200 Ct.Cl. at 353, *citing* Heffron v. United States, 405 F.2d 1307, 1312, 186 Ct.Cl. 474, 484 (1969). We cannot say as a matter of law that the penalty of dismissal is in this instance *inherently disproportionate* to the offense "promotion of gambling" nor has the severity of the penalty been challenged by plaintiff on this ground.

4. Six months after the CSC BAR decision upholding the dismissal, plaintiff was convicted (January 13, 1970) by a United States District Court in a non-jury proceeding of "unlawfully erect[ing], set[ting] up, open[ing], mak[ing] and draw[ing] a lottery and [being] unlawfully concerned in the management, conduct and carrying on a lottery" on a Federal reservation in violation of 18 U.S.C. § 13. The facts on which plaintiff was convicted were the same as those which had provided the basis for his removal from his job.

5. Even if we were to accept plaintiff's statements as to his serving as his own bank for the numbers bets placed with him, this factor alone would not preclude a finding of "promotion of gambling" within the meaning of *Reil.* A full discussion of the distinction between "gambling" and "promotion of gam-

■ The record before us completely repudiates plaintiff's contention. In considering issues of arbitrariness and lack of substantial evidence, this court is entitled to review all available evidence, including both the administrative record and *de novo* evidence taken before the trial judge. Schlegel v. United States, 416 F.2d 1372, 1375, 189 Ct.Cl. 30, 36 (1969). After receiving testimony from both of the Shipyard employees who had previously given written statements implicating plaintiff to the FBI, the Navy hearing officer found the charges against plaintiff supported by the weight of available evidence. This official's findings were approved by the Region, the CSC BAR, and the trial judge.

Furthermore, at the hearing before Trial Judge Bernhardt, plaintiff *admitted* taking numbers bets from his coworkers at the Shipyard over a period of time. The trial judge rejected as inherently implausible plaintiff's claim that he did not turn bets over to a numbers writer or so-called "house" or "bank," but simply pocketed the bets and personally assumed the risk he would have to make payment in the event of a "hit" by one of his customers. The trial judge did not believe that plaintiff's personal financial resources or daily take (4 to 11 bets a day for a period of 6 weeks) were adequate for plaintiff to run the risk of

having to pay off at 400 to 1 or 500 to 1 odds. Significantly, the trial judge who saw and heard the witnesses, observed that plaintiff's "demeanor on the stand produced the ineluctable impression that plaintiff was lying." [6]

■ After reviewing the evidence presented both at the administrative and trial levels, aided by the briefs and arguments of the parties, and in the absence of evidence to the contrary, we cannot say the decision to remove plaintiff was so lacking in factual support that it must be characterized as arbitrary or capricious.[7]

## II. Procedural Requirements

■ In his presentation before the Philadelphia Civil Service Region and the CSC BAR, plaintiff contended his removal was procedurally defective because the charge "Conduct Unbecoming a Government Employee" was too broad, the proper offense with which plaintiff should have been charged being "Promotion of Gambling on Navy Premises." [8] The Region and the CSC BAR rejected this argument, finding all of plaintiff's mandatory procedural rights had been preserved.[9] All that is necessary in a proceeding of this nature, the agency concluded, is for sufficient information

bling" can be found in point III *infra* as it relates to the "void for vagueness" theory offered by the trial judge.

6. Plaintiff's subsequent conduct lends support to this observation. To bolster his claim that his removal was not based upon substantial evidence, plaintiff alleges that he was acquitted of the charges brought against him in the United States District Court for the Eastern District of Pennsylvania. We note this is not the case. The trial judge found plaintiff was, in fact, convicted of one count of setting up an illegal lottery in violation of 18 U.S.C. § 13.

7. As pointed out in notes 4 and 6 *supra,* plaintiff was convicted in United States District Court of setting up an illegal lottery on a Federal reservation in violation of 18 U.S.C. § 13. The fact of this conviction was not before the CSC BAR when it sustained plaintiff's removal because the criminal proceedings had not yet taken place. Nevertheless,

the conviction, which was based upon the same evidence which led to plaintiff's removal, provided an acid test for that evidence and, therefore, suggests strongly that plaintiff did, in fact, engage in the proscribed conduct with which he was charged by the Shipyard. We need not decide whether plaintiff is now collaterally estopped by his subsequent conviction from asserting he did not take numbers bets on behalf of others. We note only the outcome of plaintiff's criminal trial lends additional credibility to the evidence upon which plaintiff's removal was sustained.

8. As noted *supra,* this offense was listed as Item 19 of the Standard Schedule posted in every shop at the Philadelphia Naval Shipyard, for which removal was a permissible penalty.

9. Though plaintiff was a non-veteran, he was afforded all procedural rights that have been provided by Congress to veterans. *See* 5 U.S.C. §§ 7501, 7511, 7512, 7701 (1970).

to be set forth in the Advance Notice of Proposed Removal to enable the employee to understand the charges against him and prepare his reply. Any possible defect in the charge had been cured by the two specifications of misconduct enumerated above.

We agree.

The requirements for notice of proposed adverse action in the Federal Personnel Manual, 752–6(2–2), (1969) are:

(1.) "General Standard." The notice must state the reasons supporting the proposed action, specifically and in detail, including names, times, and places. The notice should be self contained, so that a person unacquainted with the facts and circumstances involved can obtain from the notice a clear understanding of the reasons for the proposed action.

(2.) It is necessary to state the factual reasons in sufficient detail to afford the employee a clear understanding of the reasons so that he can prepare an answer. Mere statements of conclusion such as "you are guilty of immoral conduct," without supporting details, do not meet the requirements for specificity.

Plaintiff's removal notice met all of the above requirements. It informed him precisely what accusations had been leveled against him and who his accusers were. As in Schlegel v. United States, 416 F.2d at 1376, *supra* at 38, also a case in which a general charge ("immoral and indecent conduct") was accompanied by specifications of particular incidents (homosexual behavior), "[t]here can be no doubt that the plaintiff was informed with specific certainty of the nature of the conduct for which his removal was contemplated."

We sustain the finding of the CSC BAR that plaintiff was furnished with sufficient information to enable him to defend against the charge of "Conduct Unbecoming a Government Employee."

We reject the contention that the "Conduct Unbecoming a Government Employee" charge does not provide sufficient notice. Plaintiff conveniently overlooks the fact that the specifications of misconduct accompanying the general charge were in themselves violations of a particular Navy rule against "promotion of gambling" by its civilian employees. A similar attack upon the charge "Conduct Unbecoming an Officer and a Gentleman" was rejected recently in a military context by the Supreme Court in Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The *Levy* Court held that judicial constructions by the Court of Military Appeals and other military authorities had sufficiently narrowed the broad reach of the literal language of Articles 133 ("Conduct Unbecoming an Officer and a Gentleman") and 134 ("All disorders and neglect to the prejudice of good order and discipline in the armed forces") of the Uniform Code of Military Justice that the articles could withstand a void for vagueness attack. The Court added that content could be supplied to the articles even by "less formalized custom and usage." *A fortiori,* where, as here, the general charge is accompanied by instances of conduct violating *specific, published* regulations, a vagueness assault must fail.

The standard of review used by the Supreme Court in *Levy* is that which the Court normally applies to criminal statutes regulating economic affairs rather than within the area of protected first amendment expression. (Slip. op. p. 22). We find no reason to employ a stricter test here. Nor are we persuaded that the *Levy* standard is inapplicable because plaintiff is a civilian rather than a military employee of the Government. The conduct proscribed by the regulations at bar in no way infringes on the exercise of free expression; only illegal conduct is proscribed. "[Only] [w]here a statute's [or regulation's] literal scope, unaided by a narrowing * * * court interpretation, is capable of reaching expression sheltered by the First Amend-

ment, [does] the [void for vagueness] doctrine demand a greater degree of specificity than in other contexts." Smith v. Goguen, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). Thus, in either a military or civilian setting, the regulations at bar would be subject to the *Levy* standard.[10]

Since the "Conduct Unbecoming" charge in *Levy* was sustainable even in the absence of regulations as specific as the ones violated by plaintiff here, we find that under the circumstances of this case, the "Conduct Unbecoming a Government Employee" charge leveled against plaintiff must be upheld.[11]

### III. Void For Vagueness

■ Up to this point, our decision is in harmony with the findings of the trial judge. However, at this juncture, the trial judge marched to the beat of a different drummer and arrived at a decision which we find inconsistent with the evidence presented.

After finding the evidence sufficient to warrant a violation of regulations prohibiting "promotion of gambling," after finding that the Navy had followed proper procedures in terminating plaintiff, and after finding plaintiff knew he could be discharged upon discovery by Shipyard officials of his extracurricular activities, the trial judge nevertheless ruled that plaintiff be awarded back pay because the regulations defining "gam-

bling" and "promotion of gambling" lack sufficient clarity to distinguish one from the other. Stating that "[i]t is the province and the obligation of those who fashion offenses to define them clearly and unambiguously, whether a criminal statute, a municipal ordinance, or even an employment regulation proscribing, on pain of publicized penalties, certain conduct on the job," the trial judge found the above-mentioned regulations in violation of the "void for vagueness" doctrine.

We disagree.

We find sufficient delineation between the offenses of "gambling" and "promotion of gambling" properly to forewarn an individual of the consequences of his actions in participating in either activity, and therefore reject the conclusion that these regulations are impermissibly vague.

In arriving at his conclusion, the trial judge apparently utilized the following reasoning. He rejected the contention that plaintiff was acting as his own bank. But, relying on his interpretation of the holding in Reil v. United States, 456 F.2d 777, 197 Ct.Cl. 542 (1972), *i. e.,* to be guilty of "promotion of gambling," one must be acting on the behalf of another, the trial judge speculated it would be possible for *someone* to act on his own behalf in this banking capacity and not be in violation of "promotion of

---

10. In fact, plaintiff argued orally that the standards applied in Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), should be the same as those employed here. Only after the Supreme Court decision in the *Levy* case adverse to military plaintiffs did plaintiff in this suit seek to distinguish between military and civilian settings. It should be noted that a reason given by the *Levy* Court for different treatment of military and civilian personnel is that "unlike the civilian situation, the Government is often employer, landlord, provisioner and law giver rolled into one. That relationship also reflects the different purposes of the two communities." (417 U.S. p. 751, 94 S.Ct. p. 2559). Thus, in military settings, the less strict "economic affairs" standard can be applied to *all* cases,

whereas in civilian settings, a stricter test is mandated in *certain* (first amendment) situations. Clearly, a proscription against gambling on a military installation by a civilian employee does not require a stricter standard.

11. In his exceptions to the trial judge's report, plaintiff for the first time raised the further procedural argument that *his removal without a prior trial-type hearing contravened due process.* In his supplemental brief filed August 16, 1974, it is conceded that this issue has been conclusively decided, adversely to plaintiff, by the Supreme Court in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Therefore, this argument has been abandoned as futile.

gambling." [12] In the above hypothetical situation, a civilian employee acting on the behalf of another would be subject to dismissal for a first offense, while another civilian employee doing exactly the same thing, but acting on his own behalf would be subject only to a 10-day suspension under the offense of "gambling." The possibility of such a result led the trial judge to conclude that a reasonable man would not be properly forewarned by the regulations in question of the potential consequences of his conduct.

Our understanding of the distinction between "gambling" and "promotion of gambling" which the *Reil* court made does not coincide with the interpretation of the trial judge. In *Reil,* the plaintiff had been discharged for allegedly taking bets on horse races and, in one instance, allegedly accepting one numbers bet in the amount of $.05 or $.10. Unlike the plaintiff in this suit, Reil denied under oath having taken the bets in question. Unlike the witnesses in the present case, the witnesses against Reil who participated in the transactions involved never testified under oath. The *Reil* court found for plaintiff on alternative grounds: (1) the meager evidence presented, when weighed against plaintiff's strong denials, was not sufficient to meet the substantial evidence test required to sustain the agency's determination, 456 F.2d at 780, 197 Ct.Cl. at 549, and (2) the evidence presented in a rather skimpy record did not clearly indicate that plaintiff was guilty of the more serious "promotion of gambling" offense. *Id.* 456 F.2d at 781, at 549–550.

The trial judge erroneously presumes that the *Reil* court requires a person to be an agent for some undisclosed third party in order to be in violation of the regulation prohibiting "promotion of gambling." To support this interpretation, the following was quoted from the *Reil* opinion:

> The record does not directly explain why activity accessory to gambling was to be dealt with more severely than gambling itself. In the absence of a better explanation, we suppose the framers of the Schedule viewed "promotion of gambling" as making gambling transactions on behalf of others, such others being thought to be typically engaged in organized crime. The offender *might not be* wagering his own money or paying winners out of his own pocket. On the other hand, "gambling" pure and simple might be a personal peccadillo of some but little significance to the management of the Shipyard. (emphasis added)

*Id.* 456 F.2d at 778–779, at 545.

Had the trial judge read further in the same paragraph, we are certain he would have perceived the true distinction between "promotion of gambling" and "gambling" which Judge Nichols adroitly made:

> The record reflects that such a distinction was in the minds of the participants in the case. Pennsylvania law * * * made conducting a lottery a crime and 18 U.S.C. § 13 made this law apply within the Naval shipyard. The FBI agent who took the * * *

**12.** The trial judge justified his conclusion in his report at page 16:
"In reality the two offenses in question are partially fused, and the fade-point where one ends and the other begins is at best opaque. In a sense one 'promotes' gambling in the very act of gambling, whether he risks his own money or that of another, for without his participation the wager would not occur or, if it did, would not involve him. If one installs himself as an agent for a gambling principal whose money is wagered against that of others which is solicited, collected, and turned in to the principal by the agent, the agent promotes gambling in that he is a cog in the gambling machine of his principal, and in this capacity is not himself the principal nor is his capital at stake. Should this individual, acting on his own account and not as agent for a principal, take bets from all comers at stated odds on the happening of an event (the role professed by Ricci), he is both promoting and engaging in gambling at the same time, for whether those whose wagers he takes are one, a few, or many the effect of his conduct remains."

statement advised * * * *that one who placed a "numbers" bet did not violate Federal or State criminal law but one who was "involved in the operation of a numbers lottery" did.* (emphasis added)

*Id.* 456 F.2d at 779, at 545.

 The true import of the *Reil* decision can only be found in its total context, and not in a single phrase as the trial judge presumes. This distinction, as we understand it, is that the necessary element to be in violation of "promotion of gambling" is involvement in the *business* of gambling, be it as principal or agent.

The logic of this distinction and the more severe penalty for "promotion of gambling" from the Naval Shipyard's standpoint is clear. Gambling at Government facilities (and in private industry as well) can and does have a deleterious effect on the morale and efficiency of the work force, be it civilian or military. Thus, regulations aimed at discouraging employees from participating in gambling serve a useful purpose to curtail employee involvement and, for first offenders, warrant a penalty less severe than dismissal. But when an employee elevates his activity from the placing of an individual bet to that of serving as an outlet for his fellow employees' gambling proclivities, be it on his own account or as an agent for others, his effect on overall morale and efficiency becomes multiplied, thus justifying the more serious first offender penalty of possible discharge.

In addition, plaintiff has admitted that he was involved in the business of gambling, taking from 4 to 11 bets a day from fellow employees during the period in question. He further acknowledged awareness that if caught by Shipyard officials he would be discharged. Accordingly, the vagueness issue raised by the trial judge has no realistic factual foundation.

 Relevant case law supports this conclusion. The Supreme Court has held

that regulations set out in terms ordinary people exercising common sense can understand and comply with are not impermissibly vague. United States Civil Service Comm. v. Nat'l. Assoc. of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). Even in the area of criminal law, where courts are traditionally most vigilant to insure fair application, the Supreme Court has held, "no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952). In Jordan v. De George, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951), the Court noted:

We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. * * * Impossible standards of specificity are not required. * * * *The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.* [citations omitted] (emphasis added). *Id.* at 231–232, 71 S.Ct. at 708.

These standards obviously do not demand mathematical precision in delineating areas of proscribed conduct.

The dictionary is one reliable repository of the "common understanding and practices" which are the measure of language. Webster's Third New International Dictionary, Unabridged Edition (1971), defines "promote" as

[T]o contribute to the growth, enlargement, or prosperity of: FURTHER, ENCOURAGE * * * to bring or help to bring (as a business enterprise) into being * * * to present (merchandise) for public acceptance

through advertising and publicity * * *.

 Certainly, plaintiff was a "promoter" of gambling as the word is commonly understood. Plaintiff indicated at trial that he had a sizable numbers clientele, at least four to eleven persons strong each working day. On either characterization of plaintiff's activities, be it as agent or principal, plaintiff *promoted* gambling. If one installs himself as an agent for a gambling principal whose money is wagered against that of others and solicits, collects and turns bets in to his principal, the agent *promotes* gambling by being a cog in the gambling machine of the principal. In this capacity, one *promotes* gambling even though he is not himself the principal nor is his own capital at stake. Should an individual, acting on his own account and not as an agent for another, similarly take bets from all comers at stated odds on the happening of a contingent event (the role professed by Ricci), he is at least as culpable as a principal as he would be as an agent doing precisely the same thing.

A final consideration supporting our view that plaintiff knew he was engaged in "promotion of gambling" is that plaintiff himself urged throughout his administrative appeal that the proper offense with which he should have been charged was "promotion of gambling" rather than "Conduct Unbecoming a Government Employee." It certainly would be quixotic for us to introduce an element of uncertainty about what plaintiff was doing when plaintiff himself never was in doubt.

We hold the distinction between "gambling" and "promotion of gambling" to be sufficiently clear to withstand any "void for vagueness" challenge.

In conclusion, we find the CSC BAR decision sustaining plaintiff's removal is neither arbitrary nor capricious, nor unsupported by substantial evidence, and that the Philadelphia Naval Shipyard and the Civil Service Commission Region and BAR have complied with all of the prescribed procedural safeguards due

plaintiff. Moreover, the Navy regulations prohibiting "Gambling or unlawful betting in Navy premises" and "Promotion of gambling on Navy premises" are sufficiently clear and distinct to withstand a "void for vagueness" challenge under the due process clause of the fifth amendment to the Constitution.

In light of the foregoing, we conclude that plaintiff is not entitled to recover. The petition is hereby dismissed.

HYDRA MAC, INC., Appellant,

v.

MACK TRUCKS, INC., Appellee.

Patent Appeal No. 74–559.

United States Court of Customs and Patent Appeals.

Jan. 9, 1975.