**Donald J. BOYLE and Kathleen S. Paasch**

v.

**The UNITED STATES.**

**Nos. 97–73, 98–73.**

United States Court of Claims.

May 14, 1975.

David Rein, Washington, D. C., atty. of record, for plaintiffs.

Donnie Hoover, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, New York City. Leslie H. Wiesenfelder, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and NICHOLS, Judge.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

DURFEE, Senior Judge.

This civilian pay case involves the dismissal of two historians, GS–11, from their employment in the Joint Secretariat of the Joint Chiefs of Staff, Department of Defense. Plaintiffs unsuccessfully challenged their discharges in an appeal to the Civil Service Commission. Having exhausted their administrative remedies, they jointly petition this court to reinstate them in their former positions and to award them back pay. We have jurisdiction under 28 U.S.C. § 1491. The case is before us on the parties' motions for summary judgment since the pertinent and controlling facts are not in dispute.

Donald J. Boyle commenced employment with the Government as an historian, GS–9, on May 27, 1968; he was promoted to grade GS–11 on June 1, 1969, and was given an increase within grade on May 31, 1970. Kathleen S. Paasch started her employment with the Government as an historian,. GS–7, on November 14, 1966; she was advanced to grade GS–9 on November 19, 1967, and to grade GS–11 on December 1, 1968, and was given increases within grade on November 30, 1969, and again on December 13, 1970. Both Boyle and Paasch were engaged, along with others in the Historical Division, in the preparation of a multi-volume history of the Joint Chiefs of Staff.

At some point in time Boyle and Paasch became discontented with the conditions under which they were working, although the origins of their dissatisfaction are not entirely clear. Plaintiffs were primarily troubled about their work relationship with the senior historians of the Historical Division. Both of them felt that their assignments had been poorly planned and delineated, and on several occasions they registered the complaint that they were receiving insufficient guidance and inadequate supervision from their overseers. On October 9, 1970, Boyle and Paasch jointly submitted a request for a desk audit, the procedure ordinarily employed for determining whether or not a civilian employee's position is properly classified under Civil Service Commission position classification standards. It was plaintiff Paasch's hope that the requested audit would "verify that the junior-senior arrangement as practiced in the Histories Branch was at best a fiction and actually constituted mismanagement." According to plaintiff Boyle, the October 1970 desk audit was a "legitimate tool * * to determine whether or not I, indeed, was working at the level beyond my position description, GS–11." The results of the requested desk audit were handed down and transmitted to plaintiffs by a memorandum, dated November 4, 1970; it was concluded that plaintiffs' positions were correctly classified as Historian, GS–11.

Boyle and Paasch continued to express their dissatisfaction over the imbalance which allegedly prevailed in their department. While plaintiffs' complaints often lack specificity—so that the precise nature of the dispute with management is somewhat unclear—there is a recurring theme which can be gleaned from an investigation of the letters, memoranda and other evidence in the record: plaintiffs were of the opinion that management (i. e., the senior historians) had failed to establish full and effective control and direction over the work in the Historical Division; it was plaintiffs' belief that management practices and pro-

cedures rendered it impossible for them to attain professional standards. It will be observed that plaintiffs did not at any time file a formal grievance against their supervisors in accordance with appropriate Civil Service Commission regulations.

The controversy between plaintiffs and their supervisors had a serious impact upon plaintiffs' work efficiency and productivity. Plaintiffs' achievement level dropped, and they began showing little progress—or no progress at all—in the performance of their assigned tasks. Boyle and Paasch generally attributed their lack of progress to their frustrations and to their "low morale"; they were dissatisfied with the results of the October 1970 desk audit, and with the "sluggish" investigation and disposition of their complaints and grievances. It appears that plaintiffs were spending a considerable amount of duty time on aspects of their grievances, and Boyle in fact testified that the drafting and re-drafting of complaints interfered with his work. Plaintiffs also claim that certain personnel actions involving them—which they categorize as acts of harassment and reprisal—had an adverse impact upon their morale and upon their ability to carry out their work assignments. The first personnel action, in the spring of 1971, as the denial of Boyle's within-grade salary increase. The agency had determined that a step increase could not be justified in light of Boyle's inadequate progress on his assigned duties. Another personnel action which is claimed to have unfavorably influenced plaintiffs' morale was the institution of a six-month trial period of assignments at the GS–12 level. General Bratton, a Chief Supervisor of the Historical Division, advised plaintiffs, on March 2, 1971, as follows: " * * * to provide you with an additional opportunity to demonstrate your qualifications for promotion to the next higher grade I am directing the Chief, Historical Division, to give you a six-months trial period on an assignment wherein the work required, in quantity and quality, will b

at the GS–12 level, although the degree of supervision and guidance given will be such as to keep the grade at the level of GS–11." Evidently, plaintiffs did not take General Bratton at his word, and they did not view this assignment as an opportunity for advancement; rather, they believed that the trial period at the GS–12 level was another act of harassment and reprisal.

Plaintiffs' work output did not improve to a level of acceptability. It was ultimately management's determination that Boyle and Paasch should be terminated for the good of the service. On July 13, 1971, Boyle received a Notice of Proposed Removal "for failure to perform assigned duties."[1] The notice, which was signed by General Bratton, reviewed and detailed the circumstances surrounding plaintiff's assignments and his performance (or lack thereof); it stated that plaintiff had failed to complete and submit assignments within the prescribed deadlines, and it alleged that Boyle was not applying himself to his work to the extent required of employees in his position. Plaintiff was advised that he had an opportunity to reply to the Notice of Proposed Removal by July 26, 1971, and that a final decision as to his termination would be made after that date. By memorandum of July 16, 1971, Boyle requested the General Counsel of the Department of Defense to declare the July 13th proposal null and void, and plaintiff notified General Bratton on July 26th that he would defer any response to the notice of removal until his appeal to the General Counsel was decided. General Bratton thereupon informed Boyle, on July 27, 1971, that a requested ruling from the General Counsel could not extend the July 26th deadline for reply; however, General Bratton stated that he would give consideration to any verbal or written reply presented by plaintiff before the close of business on July 29, 1971. Boyle did not respond by July 29th, or thereafter, and on August 6, 1971, he received a final notice

removing him from his position, effective August 13, 1971.

On July 15, 1971, Paasch received her Notice of Proposed Removal "for failure to perform assigned duties." The letter, also signed by General Bratton, stated that she was not applying herself to her work, and that she had accordingly failed to complete and submit her assignments. It was noted that despite supervisory urgings and admonitions, Paasch had consistently reported, in recent months, no progress on her projects. Paasch responded to the notice on July 30, 1971. On August 11, 1971, she received final notice of removal, effective August 18, 1971.

Both of the plaintiffs appealed their removals to the Civil Service Commission. They requested that their appeals be heard simultaneously since the same issues, principles and materials were involved. A Hearing Examiner was assigned to both cases, and proceedings were conducted on November 18, 19 and 22, 1971. The reports of the Appeals Examining Office were issued on January 28, 1972, in which detailed findings of fact were made; it was recommended that the agency's decision to remove plaintiffs be sustained. The Appeals Examining Office grounded its recommendation as to Boyle's removal upon the following particular findings:

> An employee is expected to perform and accomplish a reasonable day's work on his assigned duties for each day's pay that he receives. It is clearly evident that Mr. Boyle, by his own admission, performed almost no work on his assigned duties from the beginning of January 1971 to July 13, 1971, the date of the advance notice, a period of about six (6) months.

> *   *   *   *   *   *

> Rather than pursue his dissatisfaction with management through the usual appellate and grievance channels, it

---

1. Boyle had received a letter of proposed removal dated May 17, 1971, but that notice was cancelled.

appears that Mr. Boyle decided to embark upon a different course of action i. e.,—not perform work, in order to focus attention on his dissatisfactions.

From our review of the numerous and lengthy communications in file carrying Mr. Boyle's name as author or co-author, it appears that he was devoting all his efforts and energies towards focusing attention on his dissatisfactions rather than facing up to the responsibility of performing his assigned duties as a GS–11 Historian, for which he was being paid.

The Appeals Examining Office reached the same conclusions, in virtually identical language, in recommending that plaintiff Paasch's removal be sustained.

Plaintiffs appealed to the Civil Service Commission Board of Appeals and Review (BAR) on February 16, 1972; they assailed the action of the agency, and the decision of the Appeals Examining Office, on various substantive and procedural grounds. The BAR concluded that the agency had satisfied all procedural requirements in processing the adverse actions; that the Appeals Examining Office properly found that the reason given for removal was supported by the evidence and sustained the charges; and that the removal action was not arbitrary, capricious or unreasonable, but was taken for such cause as would promote the efficiency of the service.

Boyle and Paasch subsequently filed suit in this court alleging that the decision to discharge them was arbitrary and capricious. Plaintiffs also contend that their removal was procedurally defective.

■ The standard by which we review personnel actions such as the one before us was stated in Morelli v. United States, 177 Ct.Cl. 848, 858 (1966), as follows:

* * * Where an administrative agency has complied with the prescribed procedural requirements, the Court of Claims can only review the action to determine whether the officials who effected the dismissal acted

arbitrarily, capriciously or were so grossly erroneous as to be in bad faith, as for instance where they may have acted without substantial evidence to support their decision or where they exceeded their authority.

*Accord*, Ricci v. United States, 205 Ct.Cl. 687, 693, 507 F.2d 1390, 1393 (1974); Grover v. United States, 200 Ct.Cl. 337, 343 (1973); Schlegel v. United States, 189 Ct.Cl. 30, 36, 416 F.2d 1372, 1375 (1969), cert. denied, 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970). It is not our function to substitute our judgment for that of the employing agency or the Civil Service Commission; rather, we review the case to determine whether their action was reasonable in light of all the evidence. Harrington v. United States, 174 Ct.Cl. 1110, 1117 (1966); Guiness v. United States, 149 Ct.Cl. 1, 6, cert. denied, 363 U.S. 819, 80 S.Ct. 1257, 4 L.Ed.2d 1517 (1960). In testing the administrative action according to this standard of review, the presumption is that the Government officials have acted in good faith in making their decision. Grover v. United States, *supra*; Travis v. United States, 199 Ct.Cl. 67, 70 (1972); Horne v. United States, 190 Ct.Cl. 145, 150, 419 F.2d 416, 419 (1969); Morelli v. United States, *supra*; Greenway v. United States, 175 Ct.Cl. 350, 362, cert. denied, 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966).

It is appropriate to observe at the outset that the prime duty and foremost obligation of any employee is to exert effort and energy in the accomplishment of assigned tasks. It is not too much to ask to require a person to function in the job he or she was hired to do. Those in the working force certainly have a legitimate interest in seeking to better their working conditions, and to that end an employee has a right to express his dissatisfactions to those in positions of higher authority. But he is assuredly not free to simply drop assigned work in order to protest management policies; nor is an employee permitted to devote all of his labor—at the expense of his

normal duties—to convince superiors that his approach to management techniques is more enlightened than theirs. This court has admonished Government employees in the past that they may not refuse to do work merely because of disagreements with management, and that if they fail to perform their duties, they do so at the risk of being insubordinate. *See* Burton v. United States, 186 Ct.Cl. 172, 404 F.2d 365 (1968), cert. denied, 394 U.S. 1002, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969).

One of the inescapable conclusions which emerges from the record before us is that for a period of about six months Boyle and Paasch sat practically idle at their desks reporting very little progress in their work. Plaintiffs do not dispute their failure to perform assigned tasks; instead, they attempt to show that their lack of progress was justified. In our view, plaintiffs have failed to offer any satisfactory explanation to excuse their suspension of work. It is clear that these two junior historians did not have a good working relationship with their supervisors; plaintiffs evidently had very little faith in the supervisory abilities and management policies of the senior historians in their division. But dissatisfaction over management practices does not constitute a sufficient ground or reason to justify an employee's work-stoppage. Plaintiffs had the option to appeal the results of their desk audit, and they were also encouraged to formalize their grievances in accordance with Civil Service Commission procedures and regulations. They chose not to do so; instead, plaintiffs became embroiled in a controversy with their overseers, and they began reporting no progress in researching and writing their assignments, apparently in an effort to draw attention to their discontentment. Such inattention and neglect of designated duties would not be tolerated in the private sector; nor can it be sanctioned in Government employment, where there is arguably an even greater obligation owed by those in public service. Nor is "low morale"—which plaintiffs claim to have adversely affected their industry—a proper warrant for lack of diligence in performing assigned work. Somewhere along the line plaintiffs simply allowed their dissatisfaction to get the best of them, and they lost sight of the fact that their principal duty was to research and write history, which is the job they were hired to do.

Plaintiffs tell us that once they complained about the management of the Historical Division their supervisors began finding fault with their work. Plaintiffs charge their managers with the setting of arbitrary deadlines for the submission of their work; and they contend that their work was subject to unreasonable review and critique above and beyond the normal practice of the agency. Boyle and Paasch claim that these and other acts on the part of their superintendents were acts of harassment which, in effect, constituted reprisals for plaintiffs' complaints regarding the agency's working conditions and management practice. Plaintiffs contend that their overseers acted arbitrarily and maliciously towards them, and that the decision to remove them from their positions was rendered in bad faith. We do not consider the posture of plaintiffs' supervisors to have been malicious or hostile, and it is not our view that the personnel actions taken by them were acts of reprisal. The decision to more closely monitor Boyle's and Paasch's work was made only after plaintiffs failed to meet established deadlines and began to consistently report no progress on their assignments. The denial of Boyle's within-grade salary increase was completely justified in light of his failure to maintain an acceptable level of productivity. There is no evidence in the record to support the view that plaintiffs were given a trial assignment at the GS–12 level for reasons other than those stated by General Bratton, *viz.*, to enable them to prove themselves worthy of advancement. Contrary to plaintiffs' assertions, they were not discharged from their GS–

11 positions for failure to prove their entitlement to promotion to grade GS–12. Plaintiffs have utterly failed to overcome the presumption that these Government officials acted in good faith in making their decisions.

■ After studying the briefs of the parties, listening to the arguments of counsel, and carefully considering the evidence in the record, we cannot say that the decision to remove plaintiffs "for failure to perform assigned duties" was arbitrary, capricious or unsupported by substantial evidence.

■ Plaintiffs contend that the administrative process was procedurally defective in two ways. It is first argued that plaintiff Boyle was not given an opportunity to reply to the July 31, 1971 Notice of Proposed Removal. Title 5 U.S.C. § 7501 (1970) provides that an employee whose removal is sought is entitled to " * * * reasonable time for filing a written answer to the charges * * *." The pertinent Civil Service Regulations, 5 C.F.R. 752.202(b) (1974) provide:

> * * * an employee is entitled to a reasonable time for answering a notice of proposed adverse action and for furnishing affidavits in support of his answer. The time to be allowed depends on the facts and circumstances of the case, and shall be sufficient to afford the employee ample opportunity to review the material relied on by the agency to support the reasons in the notice and to prepare an answer and secure affidavits * * *.

Boyle's letter of proposed removal, dated July 13, 1971, afforded him until July 26, 1971 to reply. Boyle asked the General Counsel of DOD to invalidate the notice of removal, and he informed General Bratton that he was postponing his response to the proposed removal until the General Counsel acted. General Bratton thereupon advised Boyle that an appeal to DOD's General Counsel could not serve to defer the July 26, 1971 deadline

for answering, but that consideration would be given to any response submitted by the close of business on July 29, 1971. Boyle did not reply by July 29th, or thereafter, and on August 6, 1971, he received a final notice removing him from his position, effective August 13, 1971. In view of these circumstances, we are compelled to conclude that plaintiff was given ample time and reasonable opportunity to challenge his proposed removal.

■■ Plaintiffs next assert that they were not given a fair hearing by the Appeals Examining Office. There is absolutely no merit to this contention; the record is devoid of any evidence to support the conclusion that plaintiffs were treated unfairly by the Hearing Examiner who conducted proceedings in this case. Plaintiffs say that the Hearing Examiner sustained their removal on grounds not charged by the agency. They specifically object to the Examiner's conclusion that they wilfully decided not to work in order to focus attention on their dissatisfactions. The letter of proposed removal sent to plaintiffs cited "failure to perform assigned duties" as the reason for the suggested adverse personnel action. Plaintiffs were specifically charged with not applying themselves to their work to the extent required of employees in their positions. The conclusion that Boyle and Paasch deliberately stopped working does not amount to the formulation by the Hearing Examiner of a new charge against plaintiffs; moreover, the Examiner's conclusion finds ample evidentiary support in the record.

Since the decision to remove plaintiffs was not arbitrary, capricious or unsupported by substantial evidence, and since the administrative proceedings were free of procedural defects, plaintiffs are not entitled to recover. Plaintiffs' motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. The petitions are dismissed.