Anthony R. HAMBSCH, III, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 135–85C.

United States Claims Court.

July 27, 1987.

Brian W. Shaughnessy, Washington, D.C., attorney of record, for plaintiff. Shaughnessy, Borowski & Gagner, of counsel.

Ralph A. Mittelberger, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, argued on behalf of defendant by Elaine J. Guth. David M. Cohen, Director, and Robert A. Reutershan, Asst. Director, of counsel.

## OPINION

NAPIER, Judge:

This case involves a complaint by a former federal employee alleging an erroneous agency decision regarding his eligibility for paid administrative sick leave.

It now comes before the Court on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. After a careful review of the facts and the applicable law, the Court concludes that plaintiff's motion should be denied and defendant's motion should be granted.

## Facts

On December 22, 1982, Anthony R. Hambsch, III (plaintiff), a member of the United States Secret Service Uniformed Division (USSSUD) Foreign Missions Branch since 1975, was involved in a motorcycle accident. The accident occurred at the Turkish Embassy in Washington, D.C., while Officer Hambsch was on motor scooter patrol. The accident allegedly caused injury to Officer Hambsch's right knee, right elbow, wrist, head, hip, kidney, and damage to his right front tooth cap. On the day of the accident, and in accordance with USSSUD procedure, Officer Hambsch submitted a request for an excused absence from his duties due to the injury to his wrist, elbow, and knee, claiming that the injuries were incurred in the performance of duty. On April 22, 1983, the accident was ruled by the Administrative Review Board to have been in the performance of duty, and Officer Hambsch was given paid administrative sick leave for the period between December 22, 1982, and February 27, 1983.

Allegedly due to damage caused by the accident, Officer Hambsch's front tooth cap came off and had to be reglued on April 4, 1983, July 13, 1983, and September 9, 1983. On February 14, 1984, the cap was replaced. On April 6, 1983, Officer Hambsch submitted a request to have his cracked tooth cap adjudged to have been incurred in the performance of duty. Due to the fact that Officer Hambsch failed to keep a scheduled appointment at the Metropolitan Police and Fireman's Clinic after the accident, the Medical Service Officer's Report noted an absence of evidence that the tooth was injured in the motorcycle accident. On May 3, 1983, Officer Hambsch's request was denied by Inspector Stephen Hornyak who determined that his failure to have the injury promptly evaluated precluded a finding that the condition was due to his performance of duty.

In May of 1983, Officer Hambsch requested that Inspector Hornyak reconsider his ruling, but he was advised on June 8, 1983, that the initial determination had been reaffirmed because:

1. Mr. Hambsch failed to comply with the requirement that Clinic doctors (or their designees) evaluate all injuries alleged to have been incurred in the performance of duty;

2. he had no right to be reimbursed for the cost of outside medical care without the prior written approval of a Clinic physician; and,

3. in failing to report for the examination as ordered after the accident, he frustrated efforts to ascertain whether his alleged dental injuries were incurred in the performance of duty.

On June 16, 1983, Officer Hambsch requested that a board be convened to hear his appeal. In September he was informed that the Administrative Review Board had affirmed the decision of Inspector Hornyak because there was insufficient evidence that the accident caused or aggravated Officer Hambsch's dental condition. Officer Hambsch appealed the decision of the Board to the Chief of the Uniformed Division. After further investigation, including an interview with Officer Hambsch's private dentist, his grievance was denied by the Chief and the decision of the Board was upheld.

On November 21, 1983, Officer Hambsch was involved in another motorcycle accident. The accident occurred at 10:45 p.m. while Officer Hambsch was on duty and allegedly responding to a call for relief at 1310 L Street, in Washington, D.C., which is the headquarters of the Secret Service. At the time of the accident, Officer Hambsch was traveling between 16th and 15th Street, N.W., in Washington, D.C., through a "private" alley that runs parallel to L Street and which is located on the north side of the Russian Embassy on 16th Street, and also passes the *Washington*

*Post* Building, 1150 15th Street. The alley is two-way near the *Washington Post* Building and 15th Street, and becomes one-way heading west towards 16th Street near the Russian Embassy. When the accident occurred Officer Hambsch was traveling east on the two-way portion of the alley somewhere between the center and the right side of the alley and following Officer Arnold N. Schwartz. Both Officer Hambsch and Officer Schwartz were allegedly traveling approximately 15 m.p.h., faster than the posted speed limit of 5 m.p.h., when Officer Hambsch tried to swerve but collided with the right bumper of an automobile which was exiting from a ground level parking lot. Officer Hambsch's leg was caught between the crash bar of the motorcycle and the bumper of the automobile, and he was knocked to the ground. He landed on his right side and was pinned under the motorcycle. A step-van which was parked in the alley had allegedly obstructed the view of both Officer Hambsch and the automobile driver.

Officer Hambsch was transported to George Washington Hospital by ambulance at 11:20 p.m. Upon arrival, X-rays were taken of his left leg with negative results. He was given a Tetanus shot for cuts on his left knee and right ankle and then released. Officer Hambsch received further medical care at the Metropolitan Police and Fireman's Clinic throughout the period between November 23, 1983, and September 1, 1984. He was also referred to a private orthopedic surgeon and received physical therapy for a period of time. After allegedly showing no improvement, he had an authogram which showed a tear in the posterior horn of the medial meniscus, a partial anterior cruciate tear, and a cyst in the left knee. He underwent corrective surgery on April 24, 1984.

After the accident, in order to receive paid administrative leave, Officer Hambsch requested a determination that the accident occurred in the performance of duty. On December 13, 1983, after an investigation involving numerous interviews with persons who witnessed the accident and the events leading up to the accident, as well as a study of various reports and regulations, Inspector Hornyak ruled that the accident did not occur in the performance of duty. By memorandum dated December 18, 1983, Officer Hambsch requested that a review of all facts be conducted and that a decision be rendered declaring the accident to have occurred in the performance of duty.

On February 2, 1984, the review was completed by Inspector Leland Fields and Inspector Peter Mackessy, and it was concluded that Officer Hambsch was not operating his motorcycle within prescribed operational guidelines at the time of the accident. The alleged violations included:

1. Violation of posted traffic regulations regarding direction of travel;

2. violation of posted speed limits;

3. violation of Uniformed Division policy which directs officers assigned to motorcycle patrols not to commence their return to the station prior to ten minutes before roll call times (0700, 1500, 2300 hours) unless permission has been granted by the Watch Commander or his designee;

4. use of his motorcycle as an emergency response vehicle in violation of Uniformed Division policy which specifically prohibits the use of motorcycles as pursuit or emergency vehicles for safety reasons; and

5. failure to drive on the right side of the alley.

Officer Hambsch subsequently appealed the decision and was informed on February 29, 1984, by Inspector Bernard Kotarski that the relevant facts and circumstances had been reviewed and that there was no basis for reversal of the prior performance of duty determinations. On March 6, 1984, Officer Hambsch appealed Inspector Kotarski's decision and requested that a board be convened. A Board hearing was scheduled for April 30, 1984, but had to be rescheduled because of a conflict with Officer Hambsch's corrective surgery. The hearing was rescheduled and held on September 12, 1984. On September 19, 1984, Officer Hambsch was informed that the Administrative Review Board had sustained Inspector Kotarski's prior ruling.

On October 3, 1984, Officer Hambsch requested a review of the decision by the Chief of the Uniformed Division, and on December 6, 1984, he was informed that the grievance had been denied by the Chief because he was not within operational guidelines at the time of the accident. He was also informed that there were no additional avenues of appeal.

Officer Hambsch also filed a grievance with the Chief of the Uniformed Division requesting compensatory time and reimbursement for his travel expenses for his trips to the medical clinic throughout the period. The request was denied on August 30, 1984, because "reporting to the clinic is not work * * *."

*Discussion*

Officer Hambsch comes before this Court with several claims stemming from both the December 22, 1982, accident and the November 21, 1983, accident. As to the December 22, 1982, accident he claims that the agency determination was arbitrary, capricious, and clearly erroneous and that he should be reimbursed for his dental expenses including the recapping of his front tooth, as well as given paid administrative leave, rather than sick leave and leave without pay, for April 4, 1983, July 13, 1984, and September 9, 1983, pursuant to 5 U.S.C. § 6324.

As to the accident which occurred on November 21, 1983, Officer Hambsch claims that the agency decision was arbitrary, capricious, and clearly erroneous and that he should be reimbursed for his medical expenses and given paid administrative leave rather than sick leave and leave without pay, for the period from December 12, 1983, to July 9, 1984, pursuant to 5 U.S.C. § 6324. He further asserts that the agency decisions deprived him of a "substantial property interest and his financial reputation has been damaged in derogation of his contract of employment without due process of law." He also claims an additional $100,000 in consequential damages stemming from the nonperformance of duty determinations for the "arbitrary denial of benefits."

Additionally, Officer Hambsch claims that he is entitled to reimbursement of $375 for expenses and 75 hours in compensatory time for the trips he made from his home in Annapolis, Maryland, to the Washington D.C. Metropolitan Police and Fireman's Clinic pursuant to 5 C.F.R. §§ 551.-422, 551.425, and 551.431.

The total claim is $125,890 in damages, which includes lost wages and benefits, plus interest and attorney's fees; reinstatement of 13 lost sick leave days, and 15 lost annual days, as well as 75 hours in compensatory time; and paid administrative leave for the periods of April 4, 1983, July 13, 1983, September 9, 1983, and from December 12, 1983 to July 9, 1984.

The Government asserts that the agency decisions denying Officer Hambsch's requests of performance of duty determinations in both instances were valid and supported by substantial evidence. The Government further asserts that there is no evidence that the decisions were arbitrary or capricious, and that there was no violation of procedural requirements. Additionally, the Government asserts that Officer Hambsch is not entitled to the reimbursement which he has requested for travel to the medical clinic.

The provision which establishes the jurisdiction of the Claims Court is that portion of the Tucker Act now codified as 28 U.S.C. § 1491(a)(1):

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

Therefore, "to maintain a claim in this court, other than on a contract, a plaintiff must show that money presently is due from the United States because money has been improperly paid, property has been taken by the Government, or a particular provision of law confers a right to be paid a certain sum." *Mack v. United States*, 225

Ct.Cl. 187, 190–91, 635 F.2d 828, 831 (1980); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

■ Additionally, it has been consistently held by this Court, that if a Constitutional provision, statute or regulation is used to invoke this Court's jurisdiction, it must mandate compensation by the Government for the damage sustained. *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009. Without a mandate which can fairly be interpreted as allowing an award of money damages this Court cannot grant relief. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009; *Austin v. United States,* 206 Ct.Cl. 719, 723, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). Generally, a claimant who asserts entitlement to money from the United States based on a statute or regulation granting him the right, expressly or by implication, to reimbursement, can properly come before this Court if the claim is arguable. *Ralston Steel Corp. v. United States,* 169 Ct.Cl. 119, 125, 340 F.2d 663, 667 *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965).

■ In the present case, Officer Hambsch claims that 5 U.S.C. § 6324 provides the Court with jurisdiction over his claim for damages incident to the nonperformance of duty determinations and request for paid administrative leave rather than sick leave and leave without pay. In 5 U.S.C. § 6324, Congress established a statutory right to administrative leave rather than sick leave to members of the USSSUD where an absence is due to an injury or illness resulting from the performance of duty. The relevant portion of 5 U.S.C. § 6324, entitled, *Absence of certain police and firemen,* states:

(a) Sick leave may not be charged to the account of a member of the Metropolitan Police force or the Fire Department of the District of Columbia, the United States Park Police force, or the United States Secret Service Uniformed Division force for an absence due to injury or illness resulting from the performance of duty.

(b) The determination of whether an injury or illness resulted from the performance of duty shall be made under regulations prescribed by—

(1) the District of Columbia Council for members of the Metropolitan Police force and the Fire Department of the District of Columbia;

(2) the Secretary of the Interior for the United States Park Police force; and

(3) the Secretary of the Treasury for the United States Secret Service Uniformed Division.

This statute can reasonably be read to implicitly mandate an award of monetary damages when a determination is made that an injury occurred in the performance of duty, which causes a change in the personnel status of a member of the USSSUD mandating paid administrative leave. Further, this statute can be read in connection with other statutes involving the administration of wages for federal employees. This court therefore has jurisdiction over this aspect of Officer Hambsch's claim.

■ As to the changes in Officer Hambsch's personnel status that would be incident to a determination that the accidents were in the performance of duty and subject to paid administrative leave, no statutory authority giving this court jurisdiction over these claims has been cited by Officer Hambsch which would authorize the conversion of accrued sick leave and annual leave time into it's monetary equivalent. *See Lyons v. United States,* 5 Cl.Ct. 752, 753 (1984); *Burich v. United States,* 177 Ct.Cl. 139, 150, 366 F.2d 984, 990–91 (1966), *cert. denied,* 389 U.S. 885, 88 S.Ct. 152, 19 L.Ed.2d 182 (1967). Although affirmative, non-monetary, relief associated with and subordinate to the claim may be within the jurisdiction of this Court, *Austin v. United States,* 206 Ct.Cl. at 723, in this case it is unnecessary to discuss Officer Hambsch's associated claims in regard to reinstatement of lost sick leave and annual leave because they are moot due to his removal from Government employment as of January 11, 1985. *See Hambsch v. De-*

*partment of Treasury,* 796 F.2d 430 (Fed. Cir.1986).

Next, Officer Hambsch cites 5 C.F.R. §§ 551.422, 551.425, and 551.431 as federal regulations mandating monetary compensation for the expenses he incurred in his trips to the medical clinic. 5 C.F.R. § 551.-422 states:

(a) Time spent traveling shall be considered hours of work if:

(1) An employee is required to travel during regular working hours;

(2) An employee is required to drive a vehicle or perform other work while traveling;

(3) An employee is required to travel as a passenger on a one-day assignment away from the official duty station; or

(4) An employee is required to travel as a passenger on an overnight assignment away from the official duty station during hours on nonworkdays that correspond to the employees regular working hours.

(b) An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal "home to work" travel; such travel is not hours of work. When an employee travels directly from home to a temporary duty location outside the limits of his or her official duty station, the time the employee would have spent in normal home to work travel shall be deducted from hours of work as specified in paragraphs (a)(2) and (a)(3) of this section.

The relevant portion of 5 C.F.R. § 551.-425 states:

(a) Time spent waiting for and receiving medical attention for illness or injury shall be considered hours of work if:

(1) The medical attention is required on a workday an [sic] employee reported for duty and subsequently became ill or was injured;

(2) The time spent receiving medical attention occurs during the employees regular working hours; and

(3) The employee receives the medical attention on the agency's premises, or at the direction of the agency at a medical facility away from the agency's premises.

\*   \*   \*   \*   \*   \*

The relevant portion of 5 C.F.R. § 551.-431 states:

(a) An employee will be considered on duty and time spent on standby duty shall be considered hours of work if:

(1) The employee is restricted to an agency's premises, or so close thereto that the employee cannot use the time effectively for his or her own purposes; or

(2) The employee, although not restricted to the agency's premises:

(i) Is restricted to his or her living quarters or designated post of duty;

(ii) Has his or her activities substantially limited; and

(iii) Is required to remain in a state of readiness to perform work.

\*   \*   \*   \*   \*   \*

■ These regulations can be read to implicitly mandate monetary compensation in certain circumstances; thus, "to determine whether [the] claim is well founded, the court must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative." *Ralston Steel Corp. v. United States,* 169 Ct.Cl. at 125, 340 F.2d at 667.

■ Finally, it must be noted that Officer Hambsch's claim that he was "deprived of a substantial property interest and his financial reputation in derogation of his contract of employment without due process of law," is not sufficient to invoke the jurisdiction of this Court. Federal employees hold their positions through appointment, not by contract. Therefore, Officer Hambsch does not have a valid breach of contract claim before this Court as his employment relationship is governed by statute and regulation. *See Urbina v. United States,* 192 Ct.Cl. 875, 881, 428 F.2d 1280, 1284–85 (1970). *See also Protection of the President; United States Secret Service Uniformed Division,* 3 U.S.C. § 202 *et seq.* Additionally, a vague assertion of a violation of Fifth Amendment Due

Process rights is not sufficient to invoke the jurisdiction of this Court. The Due Process guarantee embodied in the Fifth Amendment to the United States Constitution does not obligate the Federal Government to pay monetary damages. *Bellamy v. United States,* 7 Cl.Ct. 720, 723 (1985); *Carruth v. United States,* 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980); *Mack v. United States,* 225 Ct.Cl. at 192, 635 F.2d at 832. Furthermore, although this Court has jurisdiction over claims arising under the Taking Clause of the Fifth Amendment, where private property has allegedly been taken for public use, Officer Hambsch has failed, as a matter of law, to present such a claim. *Prevado Village Partnership v. United States,* 3 Cl.Ct. 219, 228 (1983); *Mack v. United States,* 225 Ct.Cl. at 191, 635 F.2d at 832.

Thus, the jurisdictionally valid claims before this Court are Officer Hambsch's claims of paid administrative leave in regard to the December 22, 1982, and the November 21, 1983, accidents pursuant to 5 U.S.C. § 6324. His claim for compensatory time and travel expenses pursuant to 5 C.F.R. §§ 551.422, 551.425, and 551.431 is also properly before this Court. These claims have all previously been subject to agency decisions.

Although a claim pursuant to 5 U.S.C. § 6324 has never been directly before this Court, this action is analogous to cases involving the Public Safety Officer's Benefit Act (PSOBA), 42 U.S.C. § 3796 *et seq.* Under both 42 U.S.C. § 3796 and 5 U.S.C. § 6324, agencies are given the responsibility of promulgating implementing regulations. Under the PSOBA the regulations are used to determine whether an officer's death was the "direct and proximate result of a personal injury sustained in the line of duty." *See Smykowski v. United States,* 227 Ct.Cl. 284, 647 F.2d 1103 (1981); *Morrow v. United States,* 227 Cl.Ct. 290, 647 F.2d 1099, *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981); *North v. United States,* 1 Ct.Cl. 93, 555 F.Supp. 382 (1982). Under 5 U.S.C. § 6324, the statute in question, the regulations are used to determine whether injuries to members of

the USSSUD force are incurred in the "performance of duty."

Noting the similarities between the statutory schemes, the Government urges the Court to follow the same standard of review as that used by the Claims Court in actions arising under the PSOBA. Officer Hambsch on the other hand asserts that *de novo* review is necessary with little deference given to the agency determinations due to the fact that no mention of the standard of review is made in 5 U.S.C. § 6324 or it's legislative history.

Officer Hambsch has not presented this Court with a valid reason for straying from the traditional role of the Claims Court in reviewing this type of agency decision. In reviewing agency decisions, the Claims Court ordinarily determines:

1) whether there has been substantial compliance with statutory and implementing regulations;

2) whether there has been any arbitrary or capricious action on the part of the Government officials involved; and

3) whether there was substantial evidence supporting the decision.

*North v. United States,* 1 Ct.Cl. at 94, 555 F.Supp. 382 (1982); *Boyle v. United States,* 207 Ct.Cl. 27, 34, 515 F.2d 1397, 1401 (1975); *Ricci v. United States,* 205 Ct.Cl. 687, 693, 507 F.2d 1390, 1393 (1974). The Court has found this standard of review sufficient in similar PSOBA actions and it is the proper standard of review in this case. *See Morrow v. United States,* 227 Ct.Cl. at 296, 647 F.2d at 1102.

It should be noted that the District of Columbia Court of Appeals has addressed similar situations involving 5 U.S.C. § 6324 as applied to members of the D.C. Metropolitan Police force who possess powers and privileges similar to those of the USSSUD force. 3 U.S.C. § 202 *et seq.* For example, in *Kegley v. Wilson,* 440 A.2d 1013, 1019 (D.C.1982), the Court reversed a *de novo* review by the trial court and upheld a nonperformance of duty determination by the agency. The Court held that the proper standard of review requires "a review of the administrative record to determine if there has been procedural error,

if there is substantial evidence in the record to support the action [of the agency], or if the action is in some manner arbitrary, capricious, or an abuse of discretion." *See Barry v. Wilson,* 448 A.2d 244, 246 (D.C.1982); *District of Columbia v. Jones,* 442 A.2d 512 (D.C.1982); *District of Columbia v. Woody,* 452 A.2d 324 (D.C. 1982). Although these decisions are not binding precedent upon this Court, they are persuasive authority and in accord with this opinion.

The USSSUD Manual provides the procedural regulations for performance of duty determinations. The pertinent portions of Chapter 2.7 state:

2.7.22 *Administrative Sick Leave Determination.*

The Adjudicating Official shall review, in it's entirety, each member's request for performance of duty injury and/or illness. The review will take into consideration whether the incident involved carelessness, negligence, poor judgment, and/or whether the member was performing within established operational guidelines. (It should be noted that members who report that they received an injury or illness while on-duty *will not* necessarily have this injury or illness adjudicated as Performance of Duty.) The review will include the member's past medical history, medical file, and the member's official personnel file. In addition, all statements made by members of the Board of Police and Fire Surgeons, statements of witnesses, any reports submitted by outside physicians who have been consulted at the direction of a member of the Board of Surgeons, and any other pertinent factors associated with the injury or illness will be reviewed.

(a) The investigation will be used by the Adjudicating Official to make an independent judgment in determining if the injury or illness resulted from performance of duty.

\* \* \* \* \* \*

2.7.23 *Request for Review of Administrative Sick Leave Determination.*

If members are not satisfied with the decision of the Adjudicating Official, they may submit, in writing, a request to the Adjudicating Official, that he review and reconsider this decision. \* \* \* Should members not receive the relief sought, they may appeal to the Administrative Review Board, which consists of three (3) officials in the rank of Deputy Chief and/or Inspector. \* \* \*

■ This regulation provides for an appeals process similiar to that used under the PSOBA. *See Smykowski v. United States,* 227 Ct.Cl. at 287 n. 4, 647 F.2d at 1105 n. 4. Through this regulation, and in both nonperformance of duty determinations, Officer Hambsch was given an initial finding on the basis of written submissions, the opportunity to present additional information and seek reconsideration, the opportunity for a formal, oral hearing on appeal to the Administrative Review Board, and a final review by the Chief of the Uniformed Division. There is no evidence of a violation of the procedural regulations as established by the Uniform Division Manual. Rather, it is clear from the record that there was compliance with USSSUD regulations in the agency determinations, and that Officer Hambsch took full advantage of the appeals process provided in the regulations. The assertion by Officer Hambsch that he was not sufficiently notified of the specific reasons behind the nonperformance of duty determinations, thus depriving him of the opportunity to address the violations, is without merit. There is sufficient evidence in the record that Officer Hambsch was informed of the reasons for the nonperformance of duty determinations in both instances.

■ Officer Hambsch's claim that the agency determinations were arbitrary and capricious is equally without merit. Before this Court can make a finding that an agency action is arbitrary and capricious, the plaintiff must overcome the strong presumption of good faith on the part of the administrative officials. *Boyle v. United States,* 207 Ct.Cl. at 34, 515 F.2d at 1401. "It requires almost irrefragable proof to demonstrate abuse of discretion sufficient

to overcome the presumption." *Wathen v. United States,* 208 Ct.Cl. 342, 354, 527 F.2d 1191, 1198 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). The investigations which followed. Officer Hambsch's requests for performance of duty determinations were thorough and involved numerous interviews with witnesses and statements by medical experts, as well as the expertise of various administrative officials and other members of the USS-SUD. There is no evidence that the decisions were arbitrary or capricious. Officer Hambsch has failed to overcome this presumption of good faith.

Finally, Officer Hambsch's claim that the agency decisions were not supported by substantial evidence must fail. In determining whether the decisions were supported by substantial evidence, the standard is not what this Court would believe on a *de novo* appraisal, but whether the agency determinations were supported by substantial evidence on the record as a whole. *Brewer v. United States Postal Service,* 227 Ct.Cl. 276, 279, 647 F.2d 1093, 1096 (1981); *Pascal v. United States,* 211 Ct.Cl. 183, 188, 543 F.2d 1284, 1287 (1976). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Further, it is not necessary to find that the agency decision is the only reasonable one, rather it is enough if the decision has a rational basis. *Wathen v. United States,* 208 Ct.Cl. at 354, 527 F.2d at 1198.

To go behind an agency decision which is grounded on a rational basis, even though it may not be the only reasonable conclusion which could have been reached, would put this Court in the awkward position of substituting its judgment for the technical expertise of administrative officials who are trained in agency procedure, and, thus, vitiate the entire administrative appeals scheme contemplated in the statute. As the Court has stated:

> We do not think that we should lightly substitute judicial oversight for that of the executive branch in an area where practical considerations of administration and experience should be paramount and where the executive's perogative and responsibility is to take expeditious action to insure the efficiency and discipline of the huge federal bureaucracy in the interests of good government.

*Wathen v. United States,* 208 Ct.Cl. at 353, 527 F.2d at 1197–98.

■ After a careful review of the administrative record, it is clear that there is substantial evidence to support the agency determinations.

■ Finally, Officer Hambsch's claim for travel expenses and compensatory time pursuant to 5 C.F.R. §§ 551.422, 551.425, and 551.431 was correctly denied. Officer Hambsch was not on regular duty and subject to regular working hours when making the trips to the medical clinic, rather he was on sick leave and leave without pay throughout the period. The regulations in question are clearly inapplicable to an employee in Officer Hambsch's position. There is no evidence that the agency determination was arbitrary, capricious, procedurally defective, or unsupported by substantial evidence, and it must therefore be upheld.

*Conclusion*

A motion for summary judgment under Rule 56 of the Rules of the United States Claims Court shall be granted where it appears from the pleadings that there is no genuine issue as to any material fact and that such facts entitle the moving party to judgment as a matter of law. RUSCC 56(c). *Cooper v. Ford Motor Co.,* 748 F.2d 677, 679 (Fed.Cir.1984). Summary judgment may not be granted where there are disputed material factual issues which can only be resolved by a trial on the merits. *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884 (Fed.Cir.1983); *Niagara Mohawk Power Corp. v. United States,* 207 Ct.Cl. 576, 583, 525 F.2d 1380, 1385 (1975). The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact. All inferences must be viewed in the light most

favorable to the party opposing this motion. *Adikes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

Because there are no material facts in dispute and because the defendant is entitled to judgment as a matter of law, the plaintiff's motion for summary judgment is denied, the defendant's cross-motion for summary judgment is granted and the Clerk is directed to dismiss the complaint. Each party is to bear its own costs.