**Sally Ann FREE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 585–86C.**

United States Claims Court.

June 27, 1989.

---

**10.** *See* affidavit of Jewell M. Hart, ¶ 4 (appendix to complaint).

William L. Bransford, Washington, D.C., for plaintiff.

Hillary A. Stern, Washington, D.C., with whom was Acting Asst. Atty. Gen., Stuart E. Schiffer, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

*Introduction*

This case is presently before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. RUSCC 12(b). Plaintiff, Sally Ann Free, was a federal employee from 1980 to 1987. During the course of her employment, Ms. Free received annual performance appraisal ratings from her superiors. Such evaluations could consist of any one of the following ratings: "outstanding," "superior," "fully satisfactory," "minimally satisfactory," or "unsatisfactory." Moreover, it could serve as a basis for a monetary payment award, demotion, grade increase or decrease, etc.

In September 1985, Ms. Free received a rating of "outstanding" from her superior. The Architectural and Transportation Barriers Compliance Board (ATBCB) later nullified this rating and instead assigned her a rating for the same period of "fully satisfactory," and, for the subsequent period ending in 1986, a rating of "minimally satisfactory." Ms. Free claims that the latter two evaluations are invalid, and that her *original* rating of "outstanding" should be given full effect for both rating periods, including the payment of awards.

The court hereby finds that it lacks Tucker Act jurisdiction over plaintiff's claim, and, therefore, grants the defendant's motion to dismiss.

*Facts*

Because in a motion to dismiss the facts are construed most favorably to the non-movant, the following facts are taken from plaintiff's memorandum in opposition to defendant's motion to dismiss, and found accordingly. Plaintiff Free was employed by the ATBCB, a government agency, from December 28, 1980 to January 3, 1987. On September 6, 1985, Ms. Free, then the Director of the Office of Technical Services, in accordance with ATBCB's regulations,[1] received a performance evaluation from the Executive Director, Robert Johnson, covering the period from October 1, 1984 to September 30, 1985, for which Ms. Free's performance was rated "outstanding." Although an "outstanding" is the highest rating an employee of the ATBCB can receive, Ms. Free was neither promoted, given a raise, nor an award therefor.

Following a period shortly after September 6, 1985, *i.e.*, on or about September 11, 1985, the ATBCB voted to amend an internal regulation which provided that performance appraisals of employees prepared

---

1. The subject regulations, 5 C.F.R. §§ 540 *et seq.*, were promulgated under the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111 *et seq.* (codified, as amended, in various sections of 5 U.S.C. §§ 2301, 4501, and 7501 *et seq.*).

by the Executive Director would have to be reviewed by the Chairman of the ATBCB (Charles Hauser). Said regulation was promulgated in the latter part of September 1985, at a point in time when less than two weeks remained in the 1985 rating period. However, it was not published in the Federal Register until May 15, 1986.

Consequently, given the foregoing, on September 10, 1986, Chairman Hauser filed a new performance appraisal of Ms. Free (Hauser's evaluation), which covered the previously evaluated period of October 1, 1984 to September 30, 1985, which purportedly superseded the one of September 6, 1985, wherein she received an "outstanding" rating. This new evaluation, however, which was first prepared by the Chairman on or about July 11, 1986, and filed July 14, 1986, rated Ms. Free as "fully successful" —*i.e.*, two steps below her previous grade of "outstanding" and one step below "superior." Mr. Hauser was not Ms. Free's supervisor for said period ending September 30, 1985, and did not consider the opinion of Mr. Johnson, who had since left government service, in writing the subsequent evaluation. In fact, he was never plaintiff's supervisor. Yet, his evaluation of Ms. Free was placed in her personnel file, and the rating that had been earlier submitted by Robert Johnson, on or about September 6, 1985, was removed from the files.

In July 1986—about the time that Mr. Hauser was preparing his supplemental evaluation of Ms. Free for the period ending September 30, 1985—her then *immediate supervisor was Executive Director Margaret Milner*, who subsequently evaluated Ms. Free for the latter period of October 1, 1985 to September 30, 1986. During this later period, Ms. Free, however, had taken an *approved* leave of absence from October 1985 to July 1986—approximately 10 of the 12 months of the October 1, 1985 to September 30, 1986 evaluation period. The ATBCB's Performance Management and Recognition System (PMRS), under which ATBCB employees were to be evaluated, at this time was not yet in place. Consequently, standards for performance review had not yet been proposed, and Ms.

Free was not aware of them until July 1986 when Ms. Milner submitted proposed performance standards and critical elements for Ms. Free's comment and review. Nonetheless, Ms. Milner submitted a written performance evaluation of Ms. Free on December 22, 1986 (Milner's evaluation), under the ATBCB's PMRS. For the period ending September 30, 1986, Ms. Free was rated "minimally satisfactory"—second from the worst rating possible.

Because Ms. Free's evaluations for both periods were less than "superior," she was *not* entitled to a merit increase in her base salary of $52,262 nor a monetary award. Because of the foregoing, Ms. Free filed a complaint in this court on September 18, 1986, subsequently amended on February 10, 1987, claiming that the ATBCB committed unjustified and unwarranted personnel actions entitling her to back pay under the Back Pay Act, 5 U.S.C. § 5596, and further relying upon this court's Tucker Act jurisdiction, *i.e.*, 28 U.S.C. § 1491.

As Ms. Free pleads in Count I of her complaint, the PMRS, issued pursuant to 5 C.F.R. § 540.101 *et seq.* and promulgated under 5 U.S.C. § 4302(a), mandates that she receive a merit pay award of at least 2%, and up to 10%, of her base salary as a result of her rating, for the period of October 1, 1984 to September 30, 1985, of "outstanding" by her immediate superior in September 1985. Further, Ms. Free claims that the ATBCB's refusal to pay this award is illegal, wrongful, and without just cause. She also cites to 5 C.F.R. § 540.109(d)(1), which requires that any employee receiving a "Level 5" rating receive an increase of 2% to 10% of his/her base salary. Statutory reliance for the foregoing is premised on 5 U.S.C. § 5406, which requires that any employee receiving a rating two levels above "fully successful," *i.e.*, "outstanding," be awarded such an increase.

With respect to the supplemental performance evaluation for the period ending September 30, 1985, filed by Chairman Hauser in September 1986, Ms. Free alleges that it is invalid because—(i) it was not prepared by her *immediate* supervisor; (ii) it was prepared by Chairman Hauser, who

lacked the legal authority to do so, and, moreover, it was prepared in violation of the ATBCB's internal procedures; (iii) it ignores a properly prepared appraisal (Johnson evaluation) covering virtually the entire initial evaluation period; and (iv) it is factually inaccurate.

Count II of the complaint concerns the evaluation Ms. Free received from Executive Director Milner which rated her performance "minimally satisfactory." Ms. Free contends that this evaluation was also invalid because, pursuant to 5 U.S.C. § 4302(a) and 5 C.F.R. §§ 430.405(c) and 540.108, the ATBCB lacked authority to rate her under the PMRS. The nub of her argument here is that 5 U.S.C. § 4302(a) requires the operative elements and standards, under which an employee may be. judged and evaluated, to be in effect for *at least 120 days before* the end of the evaluation period. Since, as Ms. Free claims, 120 days had not elapsed from the time the PMRS elements and standards were submitted to her for her comments and the end of the evaluation period, she should have been given, according to 5 C.F.R. § 540.108(a)(2)(ii), the same rating she received the previous year, *i.e.,* "outstanding."

In short, Ms. Free claims that the rating of "outstanding" that she received from Executive Director Johnson should also be given effect from the period of October 1, 1984 through October 1, 1986 (*i.e.,* for both periods), and her salary adjusted accordingly—"to which this court may determine she is entitled." Ms. Free also asks for attorney fees and costs.

*Contentions of the Parties*

**A.  *Defendant***

The government has moved this court to dismiss Ms. Free's complaint for lack of subject matter jurisdiction. The position of the government is that the Civil Service Reform Act of 1978 (CSRA) *precludes* judicial review of personnel actions taken against federal employees for such claims involving "performance awards." Conversely, judicial review of claims involving demotions, denial of a grade increase, or removals of non-preference eligible employees continue to be cognizant. In short, on the facts here, the Office of the Special Counsel is the exclusive remedy for plaintiff's performance appraisal rating and for the denial of a performance award.[2]

Furthermore, maintains the government, in order for this court to exercise its Tucker Act jurisdiction based upon the Back Pay Act, 5 U.S.C. § 5596, the claim must be based upon a personnel action taken by the agency that *is found by the agency itself, the Merit Systems Protection Board (MSPB), or the Federal Circuit* to be unwarranted or unjustified. As Ms. Free cites no appropriate authority to support her own opinion as to the warrant or justification for the agency's action, the court cannot exercise Tucker Act jurisdiction.

**B.  *Plaintiff***

In response to the government's motion to dismiss, Ms. Free strongly asserts that the government has mischaracterized her claim as one seeking judicial review of a

**2.** "The CSRA divides civil service employees into three main classifications that can be generally described as follows: 'Senior Executive Service' employees are those who occupy high-level positions in the Executive Department, but for whom appointment by the President and confirmation by the Senate is not required. 5 USC § 3132(a)(2) [5 USCS § 3132(a)(2)]. 'Competitive service' employees are all other employees for whom nomination by the President and confirmation by the Senate is not required, and who are not specifically excepted from the competitive service by statute or by statutorily authorized regulation. § 2102. 'Excepted service' personnel are the remainder—those who are in neither the competitive service nor the Senior

Executive Service. § 2103. Respondent's position was in the excepted service because it [sic] had been excluded from the competitive service by authorized Civil Service Commission (now Office of Personnel Management) regulation. 5 CFR § 213.3102(hh) (1978).

Within each of the three classifications of employment, the Act accords preferential treatment to certain veterans and their close relatives—so-called 'preference eligibles.' § 2108. Respondent, who is not a preference eligible, is referred to as a nonpreference member of the excepted service."

*United States v. Fausto,* 484 U.S. 439, —— n. 1, 108 S.Ct. 668, 670 n. 1, 98 L.Ed.2d 830, 836 n. 1 (1988).

performance appraisal. Actually, argues plaintiff, she is *not* seeking review of her performance appraisal or denial or award, but is only seeking "to have this court award her a monetary benefit that her agency has already determined she has earned." In other words, she argues that it is only the ATBCB's wrongful refusal to give effect to her *valid* evaluation, from Executive Director Robert Johnson, which this court is asked to review. Ms. Free also beseeches this court to find that the ATBCB improperly sought to nullify Johnson's evaluation by filing Mr. Hauser's evaluation some 10 months later. Such a ruse, argues Ms. Free, makes the Supreme Court's holding in *Fausto*, relied upon by the government, inapposite.

Alternatively, Ms. Free raises, for the first time, in her opposition brief, the claim that the ATBCB's refusal to pay her a performance award constitutes a wrongful taking of money violative of the due process clause of the Fifth Amendment. Ms. Free contends that this "due process concern" is within the Claims Court jurisdiction. Next, Ms. Free argues that her *only* recourse is in this court because the MSPB, Office of Special Counsel, lacks jurisdiction over her claim, relying on her arguments regarding characterization of the claim, *supra.*

Lastly, Ms. Free contends that many civilian pay cases remain within this court's Tucker Act jurisdiction. Again, she relies on her argument that no review of agency action is contemplated by her claim. Rather, she argues, her claim only calls for a determination of the legal rights of the parties based upon existing documentation.

*Issue*

Plaintiff emphasizes that it is "central" to her claim that the operative issue is properly postured. That is to say—she is *not* seeking judicial review of the underlying personnel action giving rise to her claim. Instead, she is simply seeking a judicial determination—(i) that her agency

acted properly when it gave her the outstanding performance appraisal, and (ii) that the agency could not vitiate said appraisal rating 10 months later by a non-supervisor. This dichotomy is the basis of her contention that *United States v. Fausto, supra,* is inapposite since the plaintiff there sought relief on the merits where, as here, "the issue is enforcement of a final determination already made by an agency" (Pltf's oppos., p. 9).

Implicit in plaintiff's position, argues defendant, is at least the tacit contention that she is seeking a judicial review of Chairman Hauser's subsequent adverse performance appraisal and a determination, or a declaratory judgment, that the initial performance appraisal was proper. Certainly, the jurisdictional issue aside, before this court could rule, as plaintiff requests, we must pass on the merits,[3] as ruled on by the agency, and, in doing so, we, of necessity, must review said underlying agency decision. Moreover, it is clear beyond cavil that defendant has put the efficacy of the "outstanding" performance rating by Mr. Johnson in issue in that it allegedly did not meet all of the requirements of 5 C.F.R. § 430.407.

Given the foregoing facts and circumstances, we see the threshold issue to be, as averred by defendant—whether Ms. Free's complaint requires, as a predicate for determining entitlement, that this court judicially review the underlying personnel action giving rise to her claim. Alternatively, this court must decide—whether the failure to pay plaintiff the performance awards prayed for, where said initial determination is adversely overridden, constitutes a wrongful taking in violation of the Fifth Amendment of the United States Constitution.

*Discussion*

a. *Scope of Opinion*

The prayers for relief by plaintiff on this court undoubtedly seek judicial review of a

---

**3.** Defendant avers that there would by a myriad of factual issues which this court would first have to decide in order to rule favorably for plaintiff. For example: which performance appraisal is valid—Johnson's or Hauser's; were all statutory or regulatory criteria met; was Mr. Johnson duly and solely authorized to give a final performance appraisal; and was Mr. Hauser the responsible approving official for issuing the final rating?

final agency personnel action. Consequently, we begin by addressing the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. §§ 7501–7543, in light of *United States v. Fausto, supra.*

As to Ms. Free's claim of a violation of her due process rights under the Fifth Amendment, the court finds that it lacks jurisdiction over said claim, as the Fifth Amendment does not mandate the payment of a money judgment, as is required under the Tucker Act, 28 U.S.C. § 1491(a)(1).

Lastly, in response to plaintiff's charge that *Fausto* does not affect this court's jurisdiction over civilian pay claims under the Back Pay Act, 5 U.S.C. § 5596, we simply point to the holding by the Supreme Court in *Fausto,* which opinion was issued subsequent to the cases cited by Ms. Free.

### b. *The Civil Service Reform Act of 1978*

As stated *supra,* the first issue presented to the court by the government's motion to dismiss plaintiff's complaint arises against the backdrop of the Supreme Court's recent holding in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). At issue in *Fausto* was whether the Claims Court had Tucker Act jurisdiction regarding a non-preference excepted service employee based on the Back Pay Act to review an agency's personnel action for which the CSRA does not provide a right of judicial review. After a thorough examination of the remedial provisions provided by the CSRA, the Supreme Court held that the Claims Court does not have jurisdiction to review the underlying personnel action giving rise to a claim for back pay, but only to entertain a suit for back pay when an "appropriate authority" finds that the plaintiff was subjected to an unwarranted or unjustified personnel action. *Id.* 484 U.S. at ——, 108 S.Ct. at 676, 98 L.Ed.2d at 844. While the Court expressly stated that the Claims Court is not an "appropriate authority" to review an agency's personnel determination, its holding emphasized that:

All that we find to have been "repealed" by the CSRA is the judicial interpretation

of the Back Pay Act—or, if you will, the Back Pay Act's implication—allowing review in the Court of Claims of the underlying personnel decision giving rise to the claim for backpay.

To be more explicit: The Back Pay Act provides in pertinent part:

"An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by *appropriate authority under applicable law,* rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action ... [is entitled to back pay]." 5 U.S.C. § 5596(b)(1) (emphasis added).

... we find that under the comprehensive and integrated review scheme of the CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an "appropriate authority" to review an agency's personnel determination. This does not mean that the statutory remedy provided in the Back Pay Act is eliminated, or even that the conditions for invoking it are in any way altered. Now, as previously, if an employee is found by an "appropriate authority" to have undergone an unwarranted personnel action a suit for backpay will lie. Post–CSRA, such an authority would include the agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination....

*Id.*

The CSRA was enacted by Congress in response to criticism of wasteful and irrational duplicative review stemming from " 'wide variations in the kinds of decisions ... issued on the same or similar matters,' [S.Rep. No. 95–969, at] 63, which were the product of concurrent jurisdiction, under various bases of jurisdiction, of the district courts in all Circuits and the Court of Claims." *Id.* 484 U.S. at ——, 108 S.Ct. at 671, 98 L.Ed.2d at 838. The Supreme Court noted in *Fausto,* 484 U.S. at ——, 108 S.Ct. at 672, 98 L.Ed.2d at 839, and in remedy thereof, stated that the CSRA delineates three (3) main sections that governs personnel action taken against mem-

bers of the civil service. They are Chapters 23,[4] 43, and 75.[5]

Chapter 43 of the CSRA, relevant here, entitled "Performance Appraisal," governing personnel actions based on unacceptable job performance and providing for a system of certain procedural protections, extends *no* administrative or judicial review of an agency's *final* action to either competitive service employees or non-preference members of the excepted service. *See Fausto*, 484 U.S. at ——, 108 S.Ct. at 672, 98 L.Ed.2d at 839. On the other hand, *Fausto* holds that Chapter 43 does give competitive service employees and preference members of the excepted service the right to appeal the agency's decisions to the Merit System Protection Board (MSPB), and then to the Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 4303(e); *Fausto*, 484 U.S. at ——, 108 S.Ct. at 672, 98 L.Ed.2d at 839.

■ Section 4303(e) of the CSRA is particularly noteworthy in that it provides for review by the *MSPB* only over claims by employees who have been *removed* or subject to a *reduction in grade*. Therein, it provides as follows:

> Any employee who is a preference eligible or is in the competitive service and who has been reduced in grade or removed under this section is entitled to appeal the action to the Merit Systems Protection Board under section 7701 of this title.

No remedy is provided therein to employees who seek merely to challenge the propriety of a particular appraisal rating or denial of a merit increase, as here. 5 U.S.C. § 4303(e). The court finds that, because Congress expressly recognized that results of performance appraisals could be used for such purposes as rewarding, reassigning, promoting, reducing in grade, and retaining or removing employees, *see* 5 U.S.C. § 4302(a), but only provided for administrative review over *removals* and *re-*

*ductions in grade* and not for challenges to appraisal ratings argues strongly for the position that Congress did intend to *deny* employees, such as plaintiff here, the right to appeal from a performance appraisal and the denial of an award. Therefore, we hold accordingly.

Turning to Ms. Free's complaint, the court notes that it is essentially comprised of two propositions: (1) that Johnson's performance evaluation should be given full effect by the court; and (2) that Hauser's and Milner's performance evaluations should be disregarded because, among other reasons, they are "factually inaccurate" and were submitted in violation of the ATBCB's regulations and pertinent statutes. For two reasons, this court cannot entertain such a claim.

First, as Ms. Free herself recognizes, *Fausto* requires that in order for this court to exercise its Tucker Act jurisdiction over an agency action, an appropriate authority must determine that the plaintiff was the subject of an unwarranted or an unjustified agency action. *See Fausto*, 484 U.S. at ——, 108 S.Ct. at 676, 98 L.Ed.2d at 844. Secondly, Ms. Free attempts to leap this jurisdictional hurdle by arguing that she is not seeking review of an underlying action giving rise to her claim under the Back Pay Act. Rather, she seeks only a "judicial determination that her agency acted properly when it gave her the outstanding performance appraisal by the proper and appropriate actions of her supervisor, Robert Johnson," and that the agency acted improperly when it nullified Johnson's evaluation and replaced it with one prepared in violation of statutes and regulations. Plaintiff then concludes that *Fausto* does not apply. We disagree.

■ It is patently clear that Ms. Free's claims unequivocally challenge the ATBCB's underlying personnel decision. Within her complaint, she claims that the ATBCB wrongfully disregarded Johnson's evaluation, wrongfully re-evaluated her

---

**4.** Chapter 23 forbids an agency from engaging in certain prohibited personnel practices such as discrimination, nepotism, coerced political activity, and reprisals against whistle blowers.

**5.** Chapter 75 relates to adverse action taken against employees for the efficiency of the service, *i.e.*, premised on misconduct.

performance, wrongfully gave effect to Hauser's evaluation, wrongfully implemented a new set of elements and standards in evaluating her from October 1985 through October 1986, and wrongfully gave effect to this last evaluation. With respect to Hauser's evaluation, Ms. Free also claims, *inter alia,* that it is factually inaccurate. It is difficult to imagine a clearer example of a claim that puts in to question the efficacy of the agency's *underlying personnel decision.* The ATBCB *nullified* Johnson's evaluation while Ms. Free contends that said evaluation was legal and proper. This certainly constitutes a challenge to the underlying agency action. The court cannot accept the hospitable characterization of the ATBCB's action as a mere "stubborn refusal to recognize an existing money claim," as plaintiff suggests.

As *Fausto* unequivocally states, the Claims Court cannot make determinations as to the propriety of such agency actions, for it is not an "appropriate authority." *See Fausto,* 484 U.S. at —, 108 S.Ct. at 676, 98 L.Ed.2d at 844. For this court to properly exercise its Tucker Act jurisdiction over this claim for back pay, there would have to have been a determination by such an "appropriate authority" that the ATBCB committed an unjust or unwarranted action entitling Ms. Free to recovery. No such determination has been made.

Ms. Free complains that the MSPB Special Counsel would have no jurisdiction over her claim. Although the question as to whether this is indeed so is not before us. We point out that the CSRA does not provide for review—administrative or judicial—of every type of claim. As we have stated *supra,* Chapter 43 of the CSRA, upon which Ms. Free bases her claim, only provides a right to review for those *specific* employees who have been removed or reduced in grade, not for those claiming they were wrongfully denied an award. Such action does not rise to the level of harm that Congress sought this court to review. *See Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983). In any event, the fact that the MSPB allegedly lacks jurisdiction certainly does not in any way affect this court's jurisdiction, as Ms. Free seems to be asserting.

### c. Tucker Act Jurisdiction Over Fifth Amendment Due Process Claims

In her opposition to the government's motion to dismiss, Ms. Free claims, alternatively, that the ATBCB's refusal to pay her a performance award, as prayed for, constitutes a taking of her property without due process. The court assumes that plaintiff is asserting a claim under the Fifth Amendment of the United States Constitution notwithstanding the fact that she never expressly invoked the Fifth Amendment, but only alleged a violation of her due process rights.

As is well settled, the source of law upon which a claim under the Tucker Act is predicated must mandate the payment of money. *See United States v. Mitchell,* 463 U.S. 206, 213, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *Austin v. United States,* 206 Ct.Cl. 719, 723 (1975). The Fifth Amendment does not, *ipso facto,* mandate a money payment, and, therefore, cannot serve as the sole basis for this court's Tucker Act jurisdiction. *See Walton v. United States,* 213 Ct.Cl. 755, 757 (1977). In short, this court has no jurisdiction because that constitutional provision does not in itself obligate the federal government to pay money damages. *Id.* at 757.

### d. Claims Court Precedent for Civilian Pay Claims

In arguing that *Fausto* does not preclude her from maintaining her action in this court, plaintiff cites five cases from the Claims Court and the Court of Appeals for the Federal Circuit in which Tucker Act jurisdiction was held to extend to plaintiffs' claims for money damages based upon a statute: *McClary v. United States,* 775 F.2d 280 (Fed.Cir.1985); *Hambsch v. United States,* 12 Cl.Ct. 744 (1987); *Qualls v. United States,* 230 Ct.Cl. 534, 678 F.2d 190 (1982); *Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283 (1981); *Sullivan v. United States,* 4 Cl.Ct. 70, *aff'd,* 742 F.2d

628 (Fed.Cir.1983). Plaintiff concludes therefrom that the *Fausto* case does not apply to "these types of pay cases," even though each of these cases preceded the *Fausto* opinion. As the Supreme Court expressly stated in *Fausto*, the Claims Court still has Tucker Act jurisdiction over civilian pay cases. *See Fausto*, 484 U.S. at ——, 108 S.Ct. at 676, 98 L.Ed.2d at 844. *Fausto* simply mandates that the determination as to whether an agency's action gives rise to a claim for back pay must be made by an appropriate authority—not the Claims Court. *Id.* Therefore, citing to pre-*Fausto* cases in which the Claims Court made such a determination is of no avail to Ms. Free.

*Conclusion*

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is hereby GRANTED. Plaintiff's complaint shall be dismissed. No costs.

IT IS SO ORDERED.